**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: AZALEA GARDENS BOARD &
CARE, INCORPORATED, d/b/a
Brookside of Winston-Salem,
<u>Debtor.</u>

AZALEA GARDENS BOARD & CARE,

INCORPORATED, d/b/a Brookside of
Winston-Salem,
<u>Debtor-Appellant,</u>

v.

WRH MORTGAGE, INCORPORATED,
<u>Creditor-Appellee.</u>

No. 99-1012

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-98-473-1, BK-97-50365C-11W)

Argued: April 5, 2000

Decided: May 31, 2000

Before NIEMEYER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Roger J. MINER, Senior Circuit Judge of the
United States Court of Appeals for the
Second Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Farrer Meschan, TUGGLE, DUGGINS & MES-CHAN, P.A., Greensboro, North Carolina, for Appellant. John Arlington Northen, NORTHEN BLUE, L.L.P., Chapel Hill, North Carolina, for Appellee. **ON BRIEF:** Robert C. Cone, Robert W. Franklin, TUGGLE, DUGGINS & MESCHAN, P.A., Greensboro, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Azalea Gardens Board & Care, Inc. appeals the order of the district court affirming the bankruptcy court's finding that Azalea was in default of its amended plan of reorganization under Chapter 11 of the Bankruptcy Code and of a related settlement agreement and authorizing the mortgage holder on Azalea's rest home to foreclose. Azalea contends that the bankruptcy court was without subject matter jurisdiction to enter its order and that, in any event, Azalea's defaults were de minimis and therefore insufficient to justify foreclosure. For the reasons that follow, we affirm.

I

Azalea filed a voluntary petition for Chapter 11 relief in the bankruptcy court, its estate consisting almost entirely of a rest home on which the Department of Housing and Urban Development held a $3.6 million mortgage. After the mortgage was sold to WRH Mortgage, Inc. ("WRH"), Azalea and WRH negotiated a settlement agreement for ongoing operation of the rest home and payment of the mortgage. They also agreed to an amended plan of reorganization, which the bankruptcy court confirmed in November 1997. Following

2

confirmation, Azalea leased its rest home to Faiger M. Blackwell to have him operate it. That lease extended through February 1998.

After Azalea made its first three $20,000 mortgage payments to WRH, its performance under the amended plan and settlement agreement deteriorated. Even though Azalea mailed the February payment on February 9, 1998, the payment was not received until after the February 10 due date. In addition, Azalea failed to submit to WRH required financial reports for at least three months, and it failed to pay all of the property taxes, leaving a deficit of $500. Azalea also allowed insurance on the rest home to lapse due to nonpayment of premiums. Finally, Azalea failed to submit to its counsel in escrow a deed in lieu of foreclosure by November 5, 1997, which the parties had agreed upon in order to secure Azalea's performance under the amended plan and settlement agreement. WRH sent Azalea a letter on January 28, 1998, advising it of certain of these defaults and noting in addition that Azalea's lease of the rest home to Blackwell may also have violated the amended plan.

After receiving WRH's letter, Azalea filed a motion with the bankruptcy court, invoking the bankruptcy court's "inherent continuing responsibility to assure that the [amended plan] is properly implemented" and seeking a determination that it was in compliance with the amended plan and settlement agreement. The bankruptcy court not only denied Azalea's motion but found that Azalea had breached the amended plan and settlement agreement and was in default. Specifically, the court found that Azalea had not timely made its February payment to WRH; it had failed to maintain insurance on the rest home; it had failed to file monthly reports; it had failed to pay the property taxes in full; and it had failed to deliver a deed in lieu of foreclosure to counsel by the November deadline. The bankruptcy court authorized WRH to proceed with foreclosure and receive the escrow documents from Azalea's counsel. It also enjoined Azalea not to interfere with Blackwell's continuing operation of the rest home. The court later denied Azalea's motion for reconsideration after it had "independently investigated" Azalea's concerns, but it did rescind its order requiring Blackwell's continuing operation of the rest home and transferred operation back to Azalea.

On appeal, the district court rejected Azalea's challenge to the bankruptcy court's subject matter jurisdiction and affirmed the find-

3

ing that Azalea had breached both the amended plan and the settlement agreement. Accordingly, it authorized WRH to foreclose on the rest home. This appeal followed.

II

Azalea first contends that the bankruptcy court did not have subject matter jurisdiction to find it in default of the amended plan and settlement agreement because the court considered these matters after it had confirmed the amended plan and after Azalea had filed a statement with the bankruptcy court stating that the amended plan had been substantially consummated. Azalea maintains this jurisdictional challenge even though Azalea itself invoked the bankruptcy court's jurisdiction to determine its compliance with the amended plan.

Without considering this inherent inconsistency in Azalea's position, we reject its challenge to the bankruptcy court's jurisdiction. The Bankruptcy Code authorizes a court, after confirmation, to "direct the debtor" to "perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b); see also Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 232 (4th Cir. 1987) (holding that § 1142 "limits the authority of the[bankruptcy court] to matters concerning the implementation or execution of a confirmed plan"). It is clear that the bankruptcy court, in reviewing Azalea's compliance with the amended plan and settlement agreement, had authority to direct actions necessary for the full "consummation" of a plan.

In addition, 28 U.S.C. § 1334(b) extends jurisdiction to bankruptcy courts in all proceedings "arising in or related to cases under title 11 [the Bankruptcy Code]." Under this provision, it is necessary "only to determine whether a matter is at least `related to' the bankruptcy." In re Wood, 825 F.2d 90, 93 (5th Cir. 1987). And an action is "related to" bankruptcy if "the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1002 n.11 (4th Cir. 1986) (quotation marks and citation omitted). Indeed, it is "difficult to imagine any instance in which a bankruptcy court would not have jurisdiction if the debtor were a party." Id. (quotation marks and citation omitted).

4

We believe that under either 11 U.S.C. § 1142(b) or 28 U.S.C. § 1334(b), the bankruptcy court had jurisdiction to determine whether Azalea was complying with the amended plan and settlement agreement and that the district court did not err in affirming the bankruptcy court's jurisdiction.

III

On the merits, Azalea argues that the obligations of the settlement agreement were inoperative because the bankruptcy court never mentioned the agreement in approving the amended plan. This argument overlooks the fact that the amended plan specifically stated that it would incorporate the settlement agreement as part of the court's order confirming the amended plan. Indeed, in its motion for determination of compliance with the amended plan, Azalea acknowledged that "the agreed upon Plan treatment accorded to the claim of [WRH] . . . incorporates the settlement agreement."

As to whether Azalea's conduct amounted to default, Azalea does not dispute the supporting facts. It concedes that it did not deliver the deed in lieu of foreclosure to its counsel by November 5, 1997; it does not dispute that it failed to provide monthly financial reports; it makes no assertion that it paid all the property taxes; and it acknowledges that insurance lapsed on the rest home. It argues, rather, that some of these tasks were ministerial and were left to Blackwell to perform. While that may be a legitimate claim for Azalea to make against Blackwell, it does not discharge Azalea's responsibility under the amended plan and settlement agreement. See Barker v. Agee, 378 S.E.2d 566, 570 (N.C. Ct. App. 1989), rev'd in part on other grounds, 389 S.E.2d 803 (N.C. 1990).

Azalea also argues that several of its defaults were de minimis, particularly the late mailing of its $20,000 February payment. If this payment, which was late only by a day or two, were the only act of default, Azalea's contention might merit some consideration. However, in view of the numerous defaults, some of which significantly altered the mortgage holder's risks, we find Azalea's arguments without merit. We certainly cannot conclude that the bankruptcy court's factual findings were clearly erroneous.

5

Finally, Azalea argues that the bankruptcy court wrongly enjoined it from interfering in Blackwell's continued operation of the rest home and that, in determining whether to retain Blackwell, the court engaged in improper ex parte communications. As it turned out, however, following district court intervention, the bankruptcy court stayed that part of its order authorizing Blackwell to manage the rest home and ordered that the sole possession and management of the rest home be transferred back to Azalea. Therefore, Azalea has suffered no adverse effect from the initial order of the bankruptcy court, which is now moot. See Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986).

Accordingly, we affirm the judgment of the district court.

AFFIRMED

6